UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEW DIMENSION WIRELESS, LTD.,<br>1201 Pennsylvania Avenue, N.W.<br>Suite 300<br>Washington, D.C. 20004<br><br>      Plaintiff,<br><br>v.<br><br>AVAXIA, INC.,<br>2025 Richmond Avenue<br>Staten Island, New York 10314<br>    and<br>RAMONA RIZZO,<br>2660 Peachtree Road<br>Park Plaza<br>Apartment 14D<br>Atlanta, Georgia 30305<br><br>      Defendants. | Civil Action No. _____ |

For its complaint against defendants Avaxia, Inc. ("Avaxia") and Ramona Rizzo ("Ms. Rizzo"), plaintiff New Dimension Wireless, Ltd. ("New Dimension") alleges as follows:

**JURISDICTION AND VENUE**

1. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, and the Plaintiff and Defendants are citizens of different states.

1

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

3.     This court has the authority to grant the declaratory and injunctive relief requested herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, because this is a case of actual controversy within the Court's jurisdiction.

## THE PARTIES

4.     Plaintiff New Dimension is a Delaware corporation with a principal place of business in Washington, D.C. Anthony Harper ("Mr. Harper") is the sole shareholder of New Dimension, as well as its President and sole director.

5.     Defendant Avaxia is a New York corporation with a principal place of business in New York, New York. Upon information and belief, Avaxia is wholly owned by Wael Al-Khatib ("Mr. Khatib").

6.     Defendant Ms. Rizzo is, upon information and belief, a citizen of Georgia.

## FACTS

7.     In December, 2004 New Dimension, a newly formed entity, bought a PCS service wireless license issued by the Federal Communications Commission (the "FCC License") for $220,000.00. The money for the purchase was provided by loans from a group of investors associated with Mr. Khatib. New Dimension's only significant asset is the FCC License.

8. On January 1, 2005, Mr. Harper and Ms. Rizzo entered into a "Stock Sale Agreement." A true and correct copy of the Stock Sale Agreement is attached hereto as Exhibit A. The Stock Sale Agreement is only three pages in length. In executing the Stock Sale Agreement, Mr. Harper agreed to deliver his stock in New Dimension to Ms. Rizzo at some unspecified future date. The consideration for the sale of the stock was to be a two-year consulting agreement for which Mr. Harper would be paid $120,000.00 per year. The consulting agreement was never implemented and no payments have been made.

9. Upon information and belief, Ms. Rizzo is married to Mr. Khatib

10. The Stock Sale Agreement transaction generally was intended as a means for the investor group to reclaim ownership of the FCC License by a transfer of control of New Dimension, the licensee, if the investors were not repaid over time. The Stock Sale Agreement would accomplish this by permitting Mr. Khatib to gain control of New Dimension and thereby the FCC License through his nominee, Ms. Rizzo, a/k/a Mrs. Khatib, and thereafter to satisfy the investors.

11. On information and belief, Mr. Khatib may not be eligible to hold an FCC License in his own name, or he may not wish to hold assets in his own name for other business reasons, and he therefore used Ms. Rizzo, his wife, as a prospective nominee to hold his interests. However, Mr. Khatib has made numerous statements to business associates to the effect that he is "the real owner" of New Dimension, even notwithstanding that the Stock Sale Agreement transaction has not been consummated.

12.  The Federal Communications Commission (the "FCC") has adopted rules that require truthful disclosure of the parties controlling an FCC license, and a transfer of control of a license or assignment of that FCC license requires an extensive application to the FCC and FCC approval before the transfer of control or assignment can lawfully occur. New Dimension has been advised and is concerned that the Stock Sale Agreement may violate FCC rules if implemented according to its terms. Moreover, New Dimension has been concerned about statements to the effect that any party other than Mr. Harper is the actual controlling party.

13.  On October 13, 2005, New Dimension and Avaxia, the company owned by Mr. Khatib, entered into an "Option Agreement." A true and correct copy of the Option Agreement is attached hereto as Exhibit B. The Option Agreement and its exhibits are twenty pages in length. Under the terms of the Option Agreement, Avaxia could purchase New Dimension's FCC License if certain conditions were met and payments were made.

14.  New Dimension understood that a primary purpose of the Option Agreement was to put to rest questions relating to the legality, enforceability and requirements for performance of the Stock Sale Agreement by entering into a new agreement that contained much more rigorous and well defined provisions to govern the rights and obligations of the parties relating to sale of the FCC License, including the provisions of a completely articulated Asset Purchase Agreement for the FCC License, as Exhibit A to the Option Agreement.

15. Another significant purpose of the Option Agreement on its face (see Preambles 2 and 3, and Schedule A to the Option Agreement) was to assure the New Dimension investor group that they would be repaid for their investment in the event of a sale of the FCC License to Avaxia, and that Avaxia could cause such a sale to occur.

16. Upon exercise and consummation of the Option Agreement transaction, New Dimension and Mr. Harper would receive compensation in the amount of approximately $400,000.00, based upon payments due under an Exclusive Services Agreement between New Dimension and Avaxia dated September 30, 2005, a true and correct copy of which is attached hereto as Exhibit C. This Agreement gave Avaxia exclusive rights to sell certain telecommunications products that were associated with the FCC License.

17. Section 14 of the Option Agreement provides, in part, that it "constitutes the entire agreement between the parties hereto concerning the subject matter hereof, and supersedes all prior agreements between the parties hereto, whether oral or written."

18. The real parties in interest are the same in the Stock Sale Agreement and the Option Agreement. On the one hand are Mr. Khatib, his wife and nominee Ms. Rizzo, and his company Avaxia; on the other hand are Mr. Harper and his company, New Dimension, the licensee. The subject matter of these Agreements is also the same: ownership and control of the FCC License, whether by transfer of control of New Dimension, or assignment of the FCC License itself.

19. The attorney for Mr. Khatib and Avaxia has demanded performance of the Stock Sale Agreement.

20.     The Option Agreement, by its terms, supersedes the Stock Sale Agreement. New Dimension has consistently agreed to perform its obligations under the Option Agreement according to its terms.

## CAUSES OF ACTION

### COUNT I

### DECLARATORY RELIEF

21.     Plaintiff repeats and realleges the assertions set forth in paragraphs 1 through 20 above as though fully set forth herein.

22.     Plaintiff requests a declaratory judgment that the Stock Sale Agreement has been superseded by the Option Agreement.

### COUNT II

### INJUNCTIVE RELIEF

23.     Plaintiff repeats and realleges the assertions set forth in paragraphs 1 through 22 above as though fully set forth herein.

24.     Plaintiff requests an order enjoining Ms. Rizzo from enforcing the Stock Sale Agreement.

WHEREFORE, Plaintiff respectfully requests the Court to issue an Order:

1.     Declaring the Stock Sale Agreement to be superseded by the Option Agreement and of no further legal effect;

2. Enjoining Ms. Rizzo from enforcing the Stock Sale Agreement; and

3. Awarding the Plaintiff such other and further relief as the Court deems just and appropriate.

Dated: May 17, 2006

Respectfully submitted,

_____
Bryan T. McGinnis (D.C. Bar No. 45977)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, N.W., Suite 450
Washington, D.C. 20005
(202) 508-6685 (telephone)
(202) 509-6699 (facsimile)

Attorney for Plaintiff