# EXHIBIT C

# EXCLUSIVE SALES AGREEMENT

This SALES AGREEMENT ("Agreement") is made this 20th day of September, 2005 between **NEW DIMENSION WIRELESS LTD.**, a Delaware corporation ("NEW DIMENSION"), located at 1201 Pennsylvania Avenue, Suite 300, N.W., Washington, D.C. 20004, and **AVAXIA CORP.**, a New York corporation ("AVAXIA") located at 1735 York Avenue, New York, New York 10128.

WHEREAS, **NEW DIMENSION WIRELESS LTD**, owns a station license for Call Sign WPSJ970 issued by the FCC (the "FCC License") to construct and operate a personal communications services wireless telecommunications system on PCS Block C in the Plattsburg, New York Basic Trading Area, BTA #352.; and

WHEREAS, **AVAXIA** desires to act as the Exclusive Distributor of **NEW DIMENSION WIRELESS LTD's** telecommunication services;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties agree as follows:

## DEFINITIONS

"Cards" means the pre-paid debit cards to be distributed by AVAXIA through which the Services will be sold to Customers.

"Carrier" means each of the facilities-based inter-exchange carriers from whom NEW DIMENSION obtains any portion of the Services distributed by AVAXIA under this Agreement.

"Communication Costs" means all costs actually incurred by NEW DIMENSION during the applicable period as a result of direct charges from the Carriers, plus Excise Taxes and any other expenditures to third parties, including the FCC, directly incurred by NEW DIMENSION in providing the Services.

"Customers" means AVAXIA's end users, customers and subscribers; for purposes of this Agreement.

"Distribution Agent" means a third party distribution agent to whom AVAXIA distributes air time cards, monthly plans, phones or any other services related to cellular communications for sale to Customers.

"Effective Date" means the date first specified hereinabove.

1

"Services" means the services provided by NEW DIMENSION hereunder and sold to Customers via AVAXIA under this Agreement.

1. **APPOINTMENT AS DISTRIBUTOR:** NEW DIMENSION hereby appoints AVAXIA and AVAXIA hereby accepts such appointment, to sell the NEW DIMENSION Services to AVAXIA's prospective customers ("Customers"). AVAXIA shall purchase Services from NEW DIMENSION on an exclusive basis based on cost and resell such Services to AVAXIA's own customers. AVAXIA is an agent and independent contractor and nothing herein shall be construed as an agreement between NEW DIMENSION and AVAXIA to act as partners, joint-venturers, co-employees, or consultants.

2. **TERM**: The Agreement shall commence on the above date. The term of this Agreement shall be for a period until the next expiration date of the license.

3. **COMPENSATION**: NEW DIMENSION shall receive the sum of $200,000 annually, payable monthly in advance in the sum of $16,333 per month, for making available the Services to AVAXIA; provided, however, that NEW DIMENSION shall also be paid by AVAXIA its Communications Costs incurred to third parties, within ten (10) business days of invoice to AVAXIA for such Communications Costs. Other than as set forth above, NEW DIMENSION shall have no obligation to receive credit or incur liability for the Services to be provided hereunder. Time is of the essence with respect to all payments of compensation to NEW DIMENSION. In the event of termination of this Agreement due to a material breach by AVAXIA, NEW DIMENSION shall be entitled to liquidated damages in the amount of $200,000, plus payment of all other sums past due from AVAXIA.

4. **SERVICES' ORIGINATION, TERMINATION, AND QUALITY:** NEW DIMENSION shall be responsible for the origination and termination of Services to Customers in accordance with its standard operating practice. As part of the Services provided hereunder, NEW DIMENSION will monitor the network consistent with its standard operating practices in order to provide a grade of service in accordance with industry standards. NEW DIMENSION's liability to AVAXIA for a breach or termination of this Agreement shall be limited to an aggregate maximum of $10,000; in addition, AVAXIA shall indemnify, defend and hold harmless NEW DIMENSION from any and all claims, suits, damages, judgments, awards or settlements asserted by third parties who are Customers of AVAXIA.

5. **PROTOCOL:** AVAXIA uses several methods of marketing, including other retailers (and their agents) and their employees. AVAXIA understands that it is mandatory to be fair to all such parties and prevent conflict among them.

6. **CONFIDENTIAL INFORMATION:** For the purposes of this section, "Confidential Information" is defined as any proprietary information disclosed by one party ("Disclosing Party") to the other ("Receiving Party") which information may

include, without limiting the generality of the foregoing, financial data, business and marketing plans, rates, lists of existing customers, trade secrets, ideas, designs, specifications, computer programs, lists of existing suppliers, and documents in whatever form. The Parties agree Confidential information, and all rights, title and interest thereto, shall remain the sole and exclusive property of the Disclosing Party and shall be returned upon Disclosing Party's request. Receiving Party shall not use, reproduce, disclose directly or indirectly to third parties, or allow third parties access to Disclosing Party's Confidential Information without first obtaining Disclosing Party's signed written consent or except as required to facilitate this Agreement. Receiving Party shall protect the confidentiality of Disclosing Party's Confidential information with at least the same diligent and care with which he protects his own Confidential Information. This section shall not apply to (1) Confidential Information which is now or later becomes a part of the public domain from sources other than the Parties, and (2) information already known to the Receiving Party at the time of disclosure as evidenced by presently existing written documentation that is brought to the attention of the Disclosing Party within Sixty (60) days after disclosure of said information. NEW DIMENSION agrees to maintain the confidentiality of AVAXIA's customer list as NEW DIMENSION may from time to time be directly informed of, introduced, or indirectly provide services to AVAXIA's customers. NEW DIMENSION agrees not to contract directly with AVAXIA's agents, dealers, and sales representatives who have been directly introduced to NEW DIMENSION by AVAXIA during the term of this agreement for a period of one year after the termination of this contract. Any breach of this Section shall be an incurable breach of the terms and conditions of this Agreement and may result in a termination of the Agreement. The terms and conditions of this section shall survive any termination, expiration or cancellation of this Agreement for a period of one year.

7. **TERMINATION:** Termination of this Agreement may occur regardless of the term of the Agreement, (a) by mutual written consent of the Parties, (b) by material breach of any of their terms of this Agreement by a Party, (c) when a Party becomes insolvent, or files a petition of bankruptcy, or executes an assignment for the benefit of creditors; or (d) when a party appoints a trustee or a receiver.

8. **DISPUTE RESOLUTION:** Any dispute out of this Agreement other than where injunctive relief is sought, shall be resolved by binding arbitration before the American Arbitration Association in New York, New York, under the then prevailing rules of the American Arbitration Association. Any award by such Arbitration shall be final and binding on the Parties and judgment of the award ma be entered in and enforced by a court of any forum, state or federal, having competent jurisdiction. In such Arbitration, the prevailing party shall be awarded reasonable costs and attorneys fees. Other than those matters involving injunctive relief, or any action necessary to enforce the award of the arbitrator, the parties agree that the provisions of this section are a complete defense to any suit, action or other proceeding instituted in any court or before any administrative tribunal with respect to any dispute or controversy arising out of or in connection with this Agreement. When injunctive relief or enforcement of the arbitration award is sought the prevailing party is entitled to reasonable costs and attorney's fees (including any fees or costs associated with an appeal).



9. **NOTICE:** All notices under this Agreement shall be in writing and effective upon (a) personal delivery or (b) if sent by mail, on the earlier of forty-eight (48) hours after deposit in the United States mail, first-class postage prepaid, registered or certified mail, return receipts requested, or actual receipt, and (c) if sent by other means of written communications, either delivery to a common carrier for transmission, charges prepaid, or actual transmission. All notices given thereunder by mail or other means of written communication shall be sent addressed to any party to which notice is being given at such other address as each of the parties hereto have notified the other.

10. **MISCELLANEOUS:** This Agreement shall be construed in according with, and governed by the laws of the State of New York as applied to contracts that are executed and performed entirely in the State of New York. It is the intention of the parties that the internal, substantive law of the state of New York (without regard to the conflicts of laws) shall govern the validity of this Agreement, the construction of its terms and the rights and duties of the parties. The parties agree that New York County, New York, New York shall be the sole proper venue for any action concerning this Agreement.

This Agreement constitutes the entire agreement between the parties hereto concerning the subject matter hereof, supersedes all prior agreements between the parties hereto, whether oral or written.

11. **REPRESENTATION AND WARRANTIES:** NEW DIMENSION and AVAXIA mutually represent and warrant to each other that they are corporations duly formed and validly existing under the laws of their state of incorporation, that each has the requisite power and authority to enter into and perform their obligations under this Agreement, all necessary parties and persons have validly and duly authorized the execution and delivery of this Agreement, and this Agreement constitutes the legal, valid and binding agreement of Parties and shall be enforceable against each of them in accordance with the terms and conditions herein stated.

Having had an opportunity to read and understand this Agreement and to consult with legal counsel, the Parties acknowledge and affirm their representative authorities, and commitment to obligate their respective organizations or affiliates as set forth herein.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]





      IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date written above, and acknowledge and agree to the terms of this Agreement by signing below.

NEW DIMENSION WIRELESS LTD.

Signature _[signature]_

By: _Anthony Harper_

Title: _CEO_

Date signed _10/5/05_

AVAXIA CORP.

Signature _W. Khatib_

By: _Wally Khatib_

Title: _pres._

Date signed _10/5/05_

5

# FIRST AMENDMENT TO EXCLUSIVE SALES AGREEMENT

This FIRST AMENDMENT TO THE EXCLUSIVE SALES AGREEMENT dated September 30, 2005 ("Amendment") is made this 15th day of October, 2005 between NEW DIMENSION WIRELESS LTD. (NEW DIMENSION), located at 1201Pennsylvania Avenue, Suite 300, N.W., Washington, D.C.20004, and AVAXIA CORP. (AVAXIA), 2025 Richmond Avenue, Staten Island, New York 10314.

WHEREAS, the parties entered into an Exclusive Sales Agreement (AGREEMENT) on September 30, 2005 setting forth the nature of their contractual relationship.; and

WHEREAS, the parties wish to modify and otherwise amend the term "Communication Costs" as defined in the AGREEMENT.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties agree as follows:

The definition of Communication Costs shall be modified by adding the following sentence at the conclusion of the definition set forth in the September 30, 2005 Agreement: "All elective costs incurred by NEW DIMENSION to be reimbursed by AVAXIA shall require the written approval of AVAXIA, by email, or any other writing demonstrating the mutual agreement of both parties, except that costs directly related to the provision of Services under the AGREEMENT which by their nature must be incurred by NEW DIMENSION, specifically including, without limitation, GSM World Roaming member charges, connection or termination charges from Carriers, Aggregator costs, and similar telecommunications services costs shall be deemed preapproved and reimburseable by AVAXIA at their actual cost to NEW DIMENSION."

IN WITNESS WHEREOF, the parties have caused this First Amendment to be executed as of the date written above, and acknowledge and agree to the terms of this Amendment by signing below.

**NEW DIMENSION WIRELESS LTD.**                **AVAXIA CORP.**

Signature _(signed)_                              Signature _____

By: _Anthony Hauser_                              By: _____

Title: _President_                                Title: _____

Date signed _10/13/05_                            Date signed _____

**IN WITNESS WHEREOF**, the parties have caused this First Amendment to be executed as of the date written above, and acknowledge and agree to the terms of this Amendment by signing below.

**NEW DIMENSION WIRELESS LTD.**          **AVAXIA CORP.**

Signature _____         Signature _W. Khatib_____

By: _____          By: __Wally Khatib_____
Title: _____         Title: __pres._____

Date signed _____         Date signed __10/13/05_____